## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION** | § | |
| **OPIATE LITIGATION** | § | **CIVIL ACTION NO.** |
| | § | |
| **This document relates to:** | § | **4:23-mc-00013** |
| **Case No. 1:17-md-02804-DAP** | § | |

---

## NON-PARTY CITY OF FORT WORTH'S OBJECTIONS AND MOTION TO QUASH OR IN THE ALTERNATIVE LIMIT THE SCOPE OF SUBPOENAS

---

The City of Fort Worth ("City"), a municipal corporation incorporated and existing by and under the constitution and laws of the State of Texas, does hereby make these objections and asks the Court to quash, or in the alternative, limit the scope of the non-party subpoenas that were served on the City of Fort Worth Police Department and one of its employees, Captain James Stockton, in his official capacity, pursuant to Fed. R. Civ. P. 45(d). In support of its motion, the City would show the Court the following:

### I.  BACKGROUND

On July 25, 2023, the Fort Worth Police Department, and Captain Stockton were served with non-party subpoenas to testify at a deposition and produce documents via remote means on August 18, 2023.  *See* subpoenas attached as **Exhibit "A."** In the subpoena, Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II, hereinafter, "the Defendants," request that witnesses appear on August 18, 2023, at 10:00 a.m. The subpoenas are related to a lawsuit filed by Tarrant County, Texas against a number

of pharmacies (including Kroger) in connection with the improper distribution, sale, or diversion of Prescription Opioid medications. The subpoenas seek to depose City staff on a myriad of broad topics including, but not limited to: "Suspicious Orders," "Automated Reports and Consolidated Ordering Systems (ARCOS) Data," "Prescriber Report Cards," "Texas Prescription Monitoring Program (PMP)," and "the finances of the Fort Worth Police Department."

Of note, the City is not a party to the lawsuit and its involvement with any law enforcement efforts pertaining to prescription opioids is minimal. *See* affidavit of Captain James Stockton attached as **Exhibit "B."** Because of the City's lack of involvement with the matters at issue in the opioid litigation, compliance with these subpoenas would create an undue burden to the subpoenaed employees and the City. Further, the topics to be discussed are overly broad and contain matters that are not within the day-to-day law enforcement efforts of the Fort Worth Police Department. *See* attached **Exhibit "B."** The City has attempted to confer with the issuing attorney concerning the matters raised in this motion but has received no response to date. Consequently, the City timely files this motion to quash, or in the alternative, motion to limit the scope of the subpoenas before the date of requested compliance.

## II. ARGUMENTS AND AUTHORITIES

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." To determine whether discovery is proportional to a case's needs, courts

analyze, among other factors, "the parties' relative access to relevant information, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

A subpoena served on a non-party under Federal Rule of Civil Procedure 45 is subject to these same standards—"it must seek relevant information and be proportional to the needs of the case." *Infinity Home Collection*, 2018 WL 1733262, at *2 (D. Colo. April 10, 2018) (quoting Fed. R. Evid. 401). A court further "must" quash or modify a subpoena that either "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Indeed, a subpoena that is "overbroad, irrelevant, unnecessary, and . . . a fishing expedition," served not for purposes of the litigation for which it is served but for another purpose, is an abuse of Rule 45. *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-00769-MSK-KMT, 2014 WL 3057496, at *1 (D. Colo. July 7, 2014).

## A. The Subpoenas Pose an Undue Burden

The City does not readily have the information or access to the information requested in the deposition topics sought to be discussed by Defendants. According to Captain Stockton:

> Fort Worth PD does not have primary regulatory or enforcement responsibility in relating to prescription opiates, pharmacies, and medical dispensation of such. Responsibility for this is the domain of the DEA Illegal Diversion division, the FDA, and the State Boards of Medicine, Pharmacy, and Nursing respectively. Our focus is largely upon illegal street drugs and illegal substances such as Methamphetamine, Cocaine, Heroin, MDMA/Ecstasy, Fentanyl, and marijuana.

He further states:

> In my nearly 32 years of law enforcement service, I can only personally recall three instances which involved warrant/arrest service related to pharmacists, pharmacies, or doctors, and in each of those cases the DEA was the lead agency and our officers were there only for security and uniformed presence. Since we do not have responsibility for such regulation or enforcement, we do not generate Suspicious Order Reports, nor do we use the Automated Reports and Consolidated Ordering System (ARCOS) or participate in the TX Prescription Monitoring Program as referenced in the subpoena. Accordingly, we do not compile or have such data and statistics relating to these aspects. Any such information relating to such illegal diversion of Prescription Opioids or related practices would be referred to one of the aforementioned agencies for follow-up investigation. *See* **Exhibit "B."**

In order for the City to obtain the information being sought by Defendants it would need to request such information from DEA (Drug Enforcement Agency) Illegal Diversion Division, the FDA Food and Drug Administration), and the State Boards of Medicine, Pharmacy, and Nursing. Such a request is an undue burden. Particularly, when such information is available to the Defendants, through subpoenas or public information requests submitted to those entities. ***To determine whether discovery is proportional to a case's needs, courts analyze, among other factors, "the parties' relative access to relevant information,*** . . . the importance of the discovery in resolving the issues, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit***." Fed. R. Civ. P. 26(b)(1). (Emphasis added).

Based on the foregoing the City moves to quash the non-party subpoenas served on the City and Captain Stockton for the deposition testimony and records related the opioid litigation pending in Ohio. Alternatively, the subpoenas could be modified to limit the witness testimony to the relevant law enforcement activities performed by Captain Stockton and the Fort Worth Police Department and associated relevant documents within its possession, custody, or control, to the extent they exist.

**B. Not Relevant and Overbroad**

The subpoenas also request deposition testimony related to the "finances of the Fort Worth Police Department." The subpoenas at issue relate to the improper distribution, sale, or diversion of Prescription Opioid medications. The lawsuit does not involve the City of Fort Worth, as it is not a party. As such, there is no relevant reason that the City's finances are at issue in the underlying litigation. In addition to the foregoing, many topics and documents covered by the subpoenas are overly broad and vague. *A subpoena that is "overbroad, irrelevant, unnecessary, and . . . a fishing expedition*," served not for purposes of the litigation for which it is served but for another purpose, *is an abuse of Rule 45*. *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 13-cv-00769-MSK-KMT, 2014 WL 3057496, at *1 (D. Colo. July 7, 2014). (Emphasis added).

### III. CONCLUSION

The Court should sustain the City's objections and quash the subpoenas and Captain Stockton. In the alternative, if the subpoenas are not quashed in their entirety, the City

requests they be modified to limit the topics and records to maters within the relevant law enforcement activities of the Fort Worth Police Department.

Respectfully submitted,

*/s/  Benjamin J. Sampract*
Benjamin J. Sampract
Senior Assistant City Attorney
State Bar No. 24053460
*benjamin.sampract@fortworthtexas.gov*

Destiney-Ariel N. Hicks
Assistant City Attorney
State Bar No. 24104031
*destineyariel.hicks@fortworthtexas.gov*

Keanan Matthews-Hall
Assistant City Attorney
State Bar No. 24060238
*keanan.hall@fortworthtexas.gov*

CITY OF FORT WORTH
Office of the City Attorney
200 Texas Street
Fort Worth, Texas 76102-6311
P: 817.392.7600
F: 817.392.8359

***Attorneys for the City of Fort Worth***

## CERTIFICATE OF CONFERENCE

This is to certify that a conference was attempted by counsel, Destiney-Ariel N. Hicks on August 9, 2023 and by counsel, Benjamin Sampract and Keanan Matthews-Hall, on August 15, 2023.  No response was received. A reasonable effort has been made to resolve the dispute without the necessity of Court intervention and the effort failed. Therefore, it is presented to the Court for determination.

*/s/ Benjamin J. Sampract*
Benjamin J. Sampract

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing document was, on this 16th day of August, 2023, served on counsel, in accordance with the Federal Rules of Civil Procedure.

Jennifer B. Hagedorn
Ronda L. Harvey
Fazal A. Shere
Ashley H. Odell
*rharvey@bowlesrice.com*
*fshere@bowlesrice.com*
*ahardestyodell@bowlesrice.com*
*jhagedorn@bowlesrice.com*

Counsel for Defendants The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II

*/s/ Benjamin J. Sampract*
Benjamin J. Sampract

**City of Fort Worth**

**EXHIBIT A**

# Bowles Rice

**Attorneys at Law**

600 Quarrier Street
Charleston, WV 25301

101 South Queen Street
Martinsburg, WV 25401

125 Granville Square, Suite 400
Morgantown, WV 26501

Southpointe Town Center
1800 Main Street, Suite 200, Canonsburg, PA 15317
724.514.8915

501 Avery Street
Parkersburg, WV 26101

480 West Jubal Early Drive, Suite 130
Winchester, VA 22601

Jennifer B. Hagedorn
jhagedorn@bowlesrice.com
T 724.514.8940
F 724.514.8954

bowlesrice.com

July 21, 2023

**HAND DELIVERY**

Captain James Stockton
Fort Worth Police Department
Bob Bolen Public Safety Complex
505 West Felix Street
Fort Worth, TX 76115

> Re:  *In re National Prescription Opiate Litigation, No. 17-md-02804* (United States District Court for the Northern District of Ohio)

Dear Captain Stockton:

We represent Kroger entities in a case brought by Tarrant County, Texas against retail pharmacy chains related to the dispensing of prescription opioids. The case is pending in the federal district court in Cleveland, Ohio.

Enclosed please find a subpoena for your deposition testimony. We are mindful that there are many demands on your time. However, the allegations made against our clients by the County require us to take your deposition. The deposition would take place remotely.

We have some flexibility to move the date of the deposition to accommodate your schedule, if there are other dates that work for you and for other parties in this case. However, please note that we are required by court order to complete discovery by August 28, 2023. Please reach out at any time by either email to Grayson O'Saile (gosaile@bowlesrice.com) or phone at 304-347-1780 and we can discuss how best to proceed. If you have engaged an attorney, please have your attorney contact us. Thank you for your attention to this matter.

Sincerely,

/s/ *Jennifer B. Hagedorn*

Jennifer B. Hagedorn

JBH:kkh
Enclosures

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: Case No. 1:18-op-45274-DAP | Case No. 17-md-2804 |
| TARRANT COUNTY, TX, | Judge Dan Aaron Polster |
| Plaintiff, | |
| vs. | |
| PURDUE PHARMA, et al., | |
| Defendants. | |
| Track 9 | |

## NOTICE OF INTENT TO SERVE SUBPOENA

Pursuant to the applicable Federal Rules of Civil Procedure, the Court's local rules, this Court's Case Management Orders, and any other applicable law or rule, the Defendants, The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II, and Kroger Texas LP in Track 9 will serve a subpoena commanding the production of documents and testimony on the **Captain James Stockton of the Fort Worth Police Department**.

Please find attached a copy of the subpoenas for the production of documents and testimony.

Date:  July 21, 2023                             Respectfully submitted,

                                                 */s/ Jennifer B. Hagedorn*
                                                 Ronda L. Harvey Esq. (WVSB 6326)
                                                 Fazal A. Shere, Esq. (WVSB 5433)
                                                 Ashley H. Odell, Esq. (WVSB 9380)
                                                 Jennifer B. Hagedorn, Esq. (WVSB 315543)
                                                 BOWLES RICE LLP
                                                 600 Quarrier Street
                                                 Charleston, West Virginia  25301
                                                 304-347-1100
                                                 rharvey@bowlesrice.com
                                                 fshere@bowlesrice.com
                                                 ahardestyodell@bowlesrice.com
                                                 jhagedorn@bowlesrice.com

                                                 *Counsel for Defendants The Kroger Co.,*
                                                 *Kroger Limited Partnership I, and*
                                                 *Kroger Limited Partnership II*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of July, 2023, a true and correct copy of the foregoing was served via email on the following:

mdl2804discovery@motleyrice.com

tracks6to10defendants@bbhps.com

                                                 */s/    Jennifer B. Hagedorn*
                                                 Jennifer B. Hagedorn (WVSB #315543)

                                                 *Counsel for Defendants The Kroger Co.,*
                                                 *Kroger Limited Partnership I, and*
                                                 *Kroger Limited Partnership II*

2

'AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Ohio

| | | |
|---|---|---|
| In re Prescription Opiate Litigation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:17-md-02804-DAP |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:            Captain James Stockton, Fort Worth Police Department
        Bob Bolen Public Safety Complex, 505 West Felix Street, Fort Worth, TX 76115
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Schedule "A"

| Place:            Remote Deposition via Veritext Legal Solutions | Date and Time:            08/18/2023 10:00 am |
|---|---|

        The deposition will be recorded by this method:   Stenograph and Videotape

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule "B"

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/21/2023

|            *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Jennifer B. Hagedorn |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II, Kroger TX LP  , who issues or requests this subpoena, are:

Jennifer B. Hagedorn, Bowles Rice LLP, 600 Quarrier Street, Charleston, WV 25301; 724-514-8940; jhagedorn@bowlesrice.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   1:17-md-02804-DAP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Schedule "A"

Topics for Examination

Captain James Stockton of the Fort Worth Police Department (FWPD)

The topics upon which the person or persons designated by You are asked to be prepared to testify in accordance with Rule 30(b)(6) are:

1.  Your understanding of the meaning of the term "suspicious orders" in connection with orders for controlled substances.

2.  Your procedures, policies, and protocols regarding receipt, storage, maintenance, retention, organization, analysis, utilization, investigation, and handling of Suspicious Order Reports and its approach in investigating, sharing, or in any way responding to or using such Suspicious Order Reports.

3.  Any guidance issued by the Fort Worth Police Department (FWPD)regarding the reporting of suspicious orders, including memoranda, operating procedures, or other instructions.

4.  Your use of Automated Reports and Consolidated Ordering Systems (ARCOS) Data, Suspicious Order Reports, data from the Texas Prescription Monitoring Program (Texas PMP), in connection with Your efforts to address drug-related crimes, the diversion of Prescription Opioids, or the unlawful trafficking of Prescription or Illicit Opioids.

5.  Your understanding or investigation of the source of Illicit Opioids manufactured, Distributed, or consumed in the State of Texas.

6.  Your understanding or investigation of individuals and entities for unlawfully producing, transporting, diverting, using, purchasing, distributing, selling, or trafficking Prescription or Illicit Opioids within or into the State of Texas.  Included in this topic are any communications, such as complaints or notifications, You received concerning actual or potential involvement of any person or entity in the improper distribution, sale, or diversion of Prescription Opioid medications.

7.  Your efforts to combat the misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the State of Texas.

8.  The identities of the pharmacists, pharmacy interns, doctors or other prescribers, patients, or other persons or entities that You have investigated for the diversion of Prescription Opioids within or in the State of Texas, and the identities of all persons or entities that You suspect of having engaged in such conduct.

9.  The identities of the individuals or entities You have investigated or disciplined for unlawfully producing, transporting, diverting, selling, or trafficking Prescription Opioids

1

and/or Illicit Opioids within or into the State of Texas, and the identities of all persons or entities that You suspect of having engaged in such conduct.

10. Your efforts to combat the opioid epidemic and the diversion of Prescription Opioids including but not limited to the following:

    (a) Your participation in any task force, organization, and/or committee with responsibilities relating to Prescription Opioids or Illicit Opioids in the state of Texas.

    (a) Your efforts to investigate and track the illegal use, abuse, misuse, sale, purchase, trafficking, diversion, or distribution of Prescription or Illicit Opioids within the State of Texas.

    (b) Your efforts to investigate individuals or entities located within the State of Texas, whose conduct regarding Prescription or Illicit Opioids You believe, suspect, or contend caused harm within the State of Texas.

    (c) Any information or assistance, including but not limited to financial grants, You provided to the State of Texas to combat drug-related crime, respond to the opioid epidemic, or form a joint task force to combat the opioid epidemic.

    (d) Your efforts to facilitate intelligence sharing and promote coordinated strategies to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the State of Texas.

    (e) Your efforts to investigate, indict, charge, sanction, and/or discipline individual or entities for the unlawful use, abuse, misuse, sale, purchase, trafficking, diversion, or distribution of Illicit or Prescription Opioids within or into the State of Texas.

    (f) Your efforts to develop and use Prescriber Report Cards.

11. Your understanding of the therapeutic benefits of Prescription Opioid medications.

12. Your understanding of what constitutes "diversion'" of Prescription Opioid medications, and the ways in which Prescription Opioid medications have been diverted in the State of Texas since 1996.

13. The Texas Prescription Monitoring Program (PMP). Included in this topic is why the program was created; what purpose it serves; the data it contains; who requested or had requested access to information in the program; and the evolution of its capabilities and utilization. Included in this topic is any analysis of data contained in the PMP and any actions taken in response to such analysis.

14.  Your knowledge of the volume and details of prescriptions for Prescription Opioid medications dispensed in the State of Texas.

15.  The professional obligations of pharmacists and other persons regulated by the Fort Worth Police Department (FWPD) relating to the dispensing of Prescription Opioid medications, and Your efforts to enforce those obligations.

16.  Professional education, training programs, and guidelines relating to the prescribing and dispensing of Prescription Opioid medications and other controlled substances.

17.  The sharing, or lack of sharing, of Prescription Opioid distribution data (e.g., ARCOS or CSMP data) between the TSBP and the DEA, and how the TSBP used any data it received from DEA.

18.  The authority and role of the Fort Worth Police Department (FWPD) in enforcing the Texas Controlled Substances Act, the practice of pharmacy, and the federal Controlled Substances Act.

19.  The Arlington Police Department (APD)'s licensing responsibilities, including the licensing and licensing files of manufacturers, wholesale distributors, pharmacies, pharmacists, and pharmacy technicians.

20.  The structure and operation of the Fort Worth Police Department (FWPD).

21.  The finances of the Fort Worth Police Department (FWPD).

22.  Your Communications with the Mansfield Police Department (MPD), Fort Worth Police Department (FWPD), Arlington Police Department (APD), Texas Employee Retirement System (ERS), Texas Department of Insurance (TDI) (Workers' Compensation Division), Texas Department of Family and Protective Services (DFPS), Texas A&M Opioid Task Force, Texas Drug Utilization Review Board (DURB), Texas Health and Human Services (HHS), Texas Department of State Health Services (DSHS), Texas State Board of Pharmacy (TSBP), Texas Medical Board, the Texas State Board of Dental Examiners, the Texas Board of Nursing, the National Association of Boards of Pharmacy, other state Boards of Pharmacy, the DEA, the Department of Justice, the FBI, other federal, state, and local law enforcement entities, regarding Suspicious Order Reports; the abuse, misuse, sale, purchase, trafficking, diversion, or distribution of Illicit or Prescription Opioids; efforts to combat the opioid crisis; and/or Illicit Opioids.

23.  Your Communications with Defendants, including communications regarding actual or suspected diversion by pharmacists, pharmacy interns, doctors or other prescribers, or patients in Texas.

24.  Communications between You and any other local, state, or federal agency relating to Defendants.

3

25.    Communications between You and any person or entity concerning any topic listed above (No. 1 through 24), including but not limited to all Communications regarding Illicit Opioids, Prescription Opioids, diversion, and the opioid epidemic.

## Schedule "B"

## Requests for Production of Documents

## <u>Definitions</u>

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. "Abuse" means the nonmedical or otherwise unauthorized or harmful use or misuse of any Opioid or controlled substance and includes addiction, overdose, death, and diversion to illicit use.

2. "All" shall be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

3. "Any" shall be construed to mean "any and all."

4. "Claim" means any request for payment or reimbursement, in full or in part.

5. "Claims Data" means all information and data regarding the submission, processing, status, adjudication, and reimbursement of a Claim, including claim number and extension, if any; group number; plan type; member number; member date of birth, gender, and benefit status; subscriber information; dates of injury, prescription, fill, claim submission, and bill; all diagnosis code(s); drug name, code, generic name, class, and type; prior authorization information; quantity; days supply; provider name, address, National Provider Information, Medical Education number, Drug Enforcement Agency number; bill amount, insurance allowed amount, insurance plan paid amount, copayment amount, coinsurance amount, deductible amount, other insurer paid amount, other insurer name, total paid amount; fee schedule; Average Wholesale Price unit cost; payment basis, pharmacy billed charge or Usual & Customary Charge, ingredient cost, dispensing fee, other cost information; and patient name and address or, if Plaintiffs are unable to provide patient name, information sufficient to associate all Claims filed regarding a particular individual across all databases containing responsive information.

6. "Communication(s)" means any disclosure, transfer, or exchange of information or opinion, however made.

7. "Defendants" means, collectively, the named defendants in this action, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

8. "Document(s)" has the full meaning ascribed to it Texas Rules of Civil Procedure, and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected

data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in the Board's possession, custody, or control. "Document(s)" include, but are not limited to, books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, databases, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

9. "Electronically Stored Information" or "ESI" is used consistent with how the term is defined and construed under Texas law and includes without limitation all electronic data (including reasonably accessible active, archival, or backup data, such as backup tapes, distributed data, electronic mail, forensic copies, metadata, and residual data) stored in a medium from which information can be reasonably obtained.

10. "Health Care Program(s)" means every program, department, facility, or Health Care Provider controlled, administered, overseen, or paid for by the State of Texas, its agencies, sub-agencies, offices, departments, divisions, subdivisions, boards, or commissions, or any other Person or entity acting on their behalf, whether in full or in part, that (i) provides health care for any Texas residents; (ii) provides health care for any employees, temporary employees, or independent contractors of the State of Texas during the Relevant Time Period; (iii) provides payment or reimbursement of any Claims, in full or in part; or (iv) reviews, authorizes, or determines the conditions for payment or reimbursement, in full or in part, for any Opioid prescribed, administered, or dispensed to a Patient.

11. "Health Care Provider(s)" or "HCP(s)" means any healthcare professional, healthcare or medical entity, or other Person or entities who provides medical assistance or healthcare services to Patients or other individuals, including but not limited doctors, nurses, or physician's assistants, or Persons who prescribe, administer, or dispense any Opioid or Medication Assisted Treatment to Patients or other individuals.

12. "Including" shall be construed to mean "including but not limited to."

13. "Manufacturer" means any Person, organization, or corporate entity that manufactures any Opioid.

14. "Medication Assisted Treatment" means the use of medications with counseling and behavioral therapies to treat substance Abuse disorders, including to prevent Opioid misuse, Abuse, or overdose.

15. "Opioid(s)" refers to FDA-approved pain-reducing medications consisting of natural or synthetic chemicals that bind to opioid receptors in a patient's brain or body to produce an analgesic effect.

16. "Patient(s)" means any Person in the State of Texas or any Person covered by a Health Care Program in Texas who receives medical treatment, and includes any Person to whom any Opioid is prescribed, administered, or dispensed.

2

17. "Person(s)" means any natural or legal person.

18. "Plaintiffs" mean the Plaintiffs, including all of their agencies, departments, commissions, boards, officers, or other executive entities; any agent, employee, or representative; and any other persons, agencies, or entities acting or purporting to act on their behalf or controlled by them.

19. "Program(s)" means every program, department, facility, or HCP that (i) provides health care for Plaintiffs' residents; (ii) provides health care for any employee of the Plaintiffs during the Relevant Time Period; (iii) provides payment or reimbursement of any claims, in full or in part; or (iv) reviews, authorizes, or determines the conditions for payment or reimbursement, in full or in part, for any Opioid prescribed, administered, or dispensed to a Patient.

20. "Relate to," "related to," "relates to," "relating to," and "concerning" mean referring to, summarizing, reflecting, constituting, containing, concerning, embodying, mentioning, discussing, describing, consisting of, comprising, showing, commenting on, tending to support or tending to refute, or in any way logically or factually connected with the matter that is the subject of the Request.

21. "Subject Opioid(s)" refers to any of the following Opioids: OxyContin, MS Contin, Dilaudid, Dilaudid HP, Butrans, Hysingla ER, Targinig ER, Tapentodol, Actiq, Fentora, Duragesic, Nucynta, Nucynta ER, Opana, Opana ER, Percodan, Percocet, Zydone, Kadian, Norco, any generic forms of the foregoing Opioids, oxycodone, oxymorphone, hydromorphone, hydrocodone, and prescription fentanyl.

22. "You" and "Your" mean the Person(s) or entity(s) to whom or to which this Subpoena is directed as reflected on the first page, or subsections as applicable. These terms also shall include all agencies, sub-agencies, offices, departments, divisions, subdivisions, boards, commissions, officers, agents, employees, investigators, representatives, consultants, or other entities or Persons within Your control, and any predecessor, successor, parent, subsidiary, division, or affiliate.

**Instructions**

1. Unless otherwise indicated, these Requests cover the time frame from January 1, 1990 to present.

2. When providing your responses, please indicate the Request to which each document or answer responds in the meta data field, Request No.  If You believe that You already have produced documents responsive to any of the Requests below, then please specify (by bates-number) which documents are responsive to which specific Request.

3. Documents shall be produced in accordance with and as they are kept in the usual course of business.

4. For each document that you produce, produce the current version together with all earlier editions, versions or predecessor documents during the relevant time period, even though the title of earlier documents may differ from current versions.

3

5. Requested format for documents produced electronically in response to this Request:

a.  Any documents produced in response to this Request should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

b. Document Unitization. Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

c. Bates Numbering. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically branded onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. In order to ensure that the Bates Numbers do not obscure portions of the documents, the images may be proportionally reduced to create a larger margin in which the Bates Number may be branded. There shall be no other legend or stamp placed on the document image, except those sections of a document that are redacted to eliminate material protected from disclosure by the attorney-client or work product privileges shall have the legend "REDACTED" placed in the location where the redaction(s) occurred or shall otherwise note the location and/or location of the information for which such protections are claimed.

d. File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers. e. Production Media. The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner: "V001-001," "V001-002," "V001-003." Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media. f. Objective Coding/Extracted Meta Data. Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields

and type of content set forth in the SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above. g. Native format for Excel and databases. To the extent that such documents exist in Excel or another spreadsheet program, produce the document in its native format. To the extent that the document format constitutes a database created or maintained in Access or another software program, produce the document in its native format. If the database is based upon proprietary software, produce whatever keys and instructions are necessary to review it. 6. Requested format for hard copies of documents produced in response to this Request: a. create electronic copies of the documents and produce them in accordance with the procedures described in section 5(a) herein, provided that you retain the originals from which the electronic copies were made until the final disposition of the matter; b. include a loadfile with corresponding information, including the following data fields: BegDoc, EndDoc, Custodian, DocTitle, Filename, Request No.; c. the Custodian field in the loadfile should contain the name of the custodian or location from which the hard copy document was taken; d. the Request No. field should contain the number of the Requests to which the document is responsive.

7. This Request requires you to produce all described documents in your possession, custody or control without regard to the person or persons by whom or for whom the documents were prepared (e.g., your employees, distributors or dealers, competitors or others).

8. If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document. The description shall include the following:

a. the name of each author, sender, creator, and initiator of such document;

b. the name of each recipient, addressee, or party for whom such document was intended;

c. the date the document was created;

d. the date(s) the document was in use;

e. the title of the document;

f. a detailed description of the content of the document;
g. the reason it is no longer in your possession, custody or control; and

h. the document's present whereabouts and custodian thereof.

9. In the event a document that is responsive to these Requests is not in your possession but you have a right to obtain the document or a copy of the document from a third party, you must obtain it (or a copy) and produce it in response to these Requests.
10. If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

11. If you assert a privilege in responding to this Subpoena, state the type of privilege asserted and the basis for its assertion. In addition, identify the Communication or Document with respect to which the privilege is asserted. For any document to which a privilege is asserted, state:

a. The type of document (e.g., letter, memorandum, contract, etc.), the date of the document, and the subject matter of the same;

b. The name, address, and position of the author of the document and of any person who assisted in its preparation;

c. The name, address, and position of each addressee or recipient of the document or any copies of it;

d. The present location of the document and the identity of the person having custody of it.

12. The documents requested: (i) shall not contain any HIPAA-protected patient information including patient names, social security numbers, addresses, birth dates, or other identifying information; or, (ii) shall have HIPAA-protected patient identifying information redacted by defendant. Should You consider any of the Documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate these documents as such under any operative Protective Order in this case.

13. Should You determine that any of the Documents requested contain personal health information that may not be disclosed pursuant to HIPAA or analogous state law, please redact that information and assign in its place a unique identifier. Where there exists a good faith doubt as to the scope of personal health information that should be redacted, You are asked and encouraged to contact counsel for Defendants in advance of applying potentially overbroad redactions or unnecessarily withholding responsive Documents.

14. Produce documents in the order in which you maintained them in your files, in copies of their original file folders, labeled with the folder's original file labels. Do not mask any portion of any document; produce the entire document, including all attachments to such responsive documents. Provide a key to all abbreviations used in documents and attach the key to the appropriate documents.

15. If you obtain information or documents responsive to any Request after you have submitted your written Responses or production, you have an affirmative duty to supplement your Responses and/or production with any new and/or different information and/or documents that become available to you.

16. Where there exists a good faith doubt as to the meaning or intended scope of a Request, and Your sole objection would be to its vagueness or ambiguity, You are asked and encouraged to contact counsel for Defendants in advance of asserting an unnecessary objection. The undersigned counsel will provide additional clarification or explanation as may be needed.

**Special Instructions for Proprietary Databases**

Documents stored in proprietary databases should be produced in such a way that the data, information, and functionality of the original database(s) is not lost.

**Documents to be Produced Pursuant to this Subpoena**

1.   All Communications between You and Plaintiffs discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into Tarrant County, Texas.

2.   All Documents discussing, referring, or relating to Your or Plaintiffs' efforts, including, but not limited to, any programs or task forces that You or Plaintiffs have developed to combat or address the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within Tarrant County, Texas.

3.   All Documents relating to any law enforcement, child endangerment, child removal, or administrative investigations, prosecutions, and/or enforcement actions relating to Prescription or Illicit Opioids or Illicit Drugs in Tarrant County, Texas.

4.   All Documents discussing, referring, or relating to Your meeting minutes, including, but not limited to, committee and subcommittee meeting minutes, in which the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids, Illicit Opioids, or Illicit Drugs within or into Tarrant County Texas or where Tarrant County, Texas or the State of Texas were discussed.

5.   All Documents constituting or related to any Communications between You, or anyone acting on Your behalf, and any federal, state, or local official or agency (including, but not limited to, the DEA, the Federal Bureau of Investigation, a United States Attorney or representative thereof, any other department within the Texas Health and Human Services or its constituent providers, the Texas Department of Public Safety, the Texas Board of Pharmacy, the Texas Medical Board, the Texas Board of Dentistry, the California Board of Examiners for Licensed Practical Nurses, the Texas Board of Nursing, other cities, counties or agencies of the State of Texas, or any city, county, or agency of any other State), insurer, third-party payer, or pharmacy benefit manager that refer or relate to improper prescribing, unlawful sale, or other suspected wrongdoing related to Prescription Opioids, Illicit Opioids, or Illicit Drugs, or the possession, abuse, illegal sale, or addiction to other opioids in Tarrant County, Texas or the State of Texas.

6.   All Documents and data relating to substance abuse or suspected substance abuse involvement in Tarrant County, Texas or the State of Texas, including but not limited to information contained in any applicable tracking database.

7.   All narrative data fields (de-identified) from any database discussing or relating to parental or child abuse of, or removal due to, Prescription Opioids, Illicit Opioids, and Illicit Drugs.

8.      All data You collected or received from any third party contractors related to drug testing results, including any information identifying the presence of Prescription Opioids, Illicit Opioids, or Illicit Drugs.

9.      All statistical reports You have prepared (either upon request or as part of the normal course of operations) that relate to substance abuse in Tarrant County, Texas.

10.     All Documents sufficient to identify, by year and for each program or service that You provide, (a) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have an opioid use disorder resulting from using Illicit Opioids, and the amount You were paid by Tarrant County, Texas for those services; (b) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have an opioid use disorder resulting from the misuse or abuse of Prescription Opioids, and the amount You were paid by Tarrant County, Texas for those services; (c) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have a drug addiction that does not involve opioids, and the amount You were paid by Tarrant County, Texas for those services; and (d) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have a substance abuse problem or addiction that does not involve drugs, and the amount You were paid by Tarrant County, Texas for those services.

11.     All transactional data and databases You use to track, record, or otherwise account for Your annual revenue and expenses.

12.     All Documents reflecting Your finances, including but not limited to, budgets, expense reports, and Documents concerning Your funding.

13.     All Documents and Communications referring to or relating to any assistance, grants, subgrants, or funding that You sought and/or obtained to combat drug-related issues with respect to the opioid epidemic, including but not limited to, documents reflecting funding you provided to the Plaintiffs related to Prescription or Illicit Opioids.

14.     All transactional data and databases You use or Documents you have that track, record, or otherwise account for the services that You provide or the number of cases you handle or service per year.

15.     All transactional data and databases You use or Documents you have that track, record, or otherwise account for the services that You provide or the number of cases you handle or service per year regarding, relating to or referring to Prescription Opioids, Illicit Opioids, or Illicit Drugs.

16.     All case files in Your possession or control that relate to Prescription or Illicit Opioids or any other substance use and abuse in Tarrant County, Texas.

17.  All Documents reflecting, describing, or referring to the reason or root cause for any increases or decreases in the number of cases or amount of services You are currently handling or providing or have handled or provided in the past.

18.  All Documents reflecting Your structure and operation, including but not limited to, organizational charts and all Documents discussing the operation of Your Executive Board, initiatives and programs.

19.  All Documents concerning and/or relating to Your creation.

20.  All Documents discussing, referring, or relating to any trainings that You provide regarding Prescription or Illicit Opioids.

21.  All Documents constituting or describing data and/or analysis relating to people who obtain Prescription Opioids through illegal or improper means and/or diversion.

22.  All Documents containing data or analysis relating to Prescription Opioids that were prescribed off-label or contrary to accepted medical guidelines.

23.  All Documents containing data or analysis relating to the abuse, misuse, or diversion of Prescription Opioids, broken down by product or chemical substance.

24.  All Documents reflecting direct, indirect, and monetary costs and expenses You or any Plaintiff has incurred that You attribute to the opioid abuse epidemic or the use, misuse or abuse of Prescription Opioids or Illicit Opioids in Tarrant County, Texas.

25.  All Documents relating to any investigation of factors other than the activities of Defendants that caused or contributed to the opioid abuse epidemic in the Tarrant County, Texas.

26.  Any reports, presentations, lectures, seminars, workshops, symposia or other similar educational programs made or sponsored by You or on Your behalf related to the opioid abuse epidemic in Tarrant County, Texas, including all data and source materials used to create those documents.

# Bowles Rice

**Attorneys at Law**

Southpointe Town Center
1800 Main Street, Suite 200, Canonsburg, PA 15317
724.514.8915

Jennifer B. Hagedorn
jhagedorn@bowlesrice.com
T 724.514.8940
F 724.514.8954

600 Quarrier Street
Charleston, WV 25301

101 South Queen Street
Martinsburg, WV 25401

125 Granville Square, Suite 400
Morgantown, WV 26501

501 Avery Street
Parkersburg, WV 26101

480 West Jubal Early Drive, Suite 130
Winchester, VA 22601

bowlesrice.com

July 21, 2023

**HAND DELIVERY**

Fort Worth Police Department
Bob Bolen Public Safety Complex
505 West Felix Street
Fort Worth, TX 76115

Re:     *In re National Prescription Opiate Litigation, No. 17-md-02804* (United States
District Court for the Northern District of Ohio)

Dear Sir or Madam:

We represent Kroger entities in a case brought by Tarrant County, Texas against retail pharmacy chains related to the dispensing of prescription opioids. The case is pending in the federal district court in Cleveland, Ohio.

Enclosed please find a subpoena for your deposition testimony. We are mindful that there are many demands on your time. However, the allegations made against our clients by the County require us to take your deposition. The deposition would take place remotely.

We have some flexibility to move the date of the deposition to accommodate your schedule, if there are other dates that work for you and for other parties in this case. However, please note that we are required by court order to complete discovery by August 28, 2023. Please reach out at any time by either email to Grayson O'Saile (gosaile@bowlesrice.com) or phone at 304-347-1780 and we can discuss how best to proceed. If you have engaged an attorney, please have your attorney contact us. Thank you for your attention to this matter.

Sincerely,

/s/ *Jennifer B. Hagedorn*

Jennifer B. Hagedorn

JBH:kkh
Enclosures

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

7/25/23
*OR*

| | |
|---|---|
| IN RE PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: Case No. 1:18-op-45274-DAP | Case No. 17-md-2804 |
| TARRANT COUNTY, TX, | Judge Dan Aaron Polster |
| Plaintiff, | |
| vs. | |
| PURDUE PHARMA, et al., | |
| Defendants. | |
| Track 9 | |

**<u>NOTICE OF INTENT TO SERVE SUBPOENA</u>**

Pursuant to the applicable Federal Rules of Civil Procedure, the Court's local rules, this Court's Case Management Orders, and any other applicable law or rule, the Defendants, The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II, and Kroger Texas LP in Track 9 will serve a subpoena commanding the production of documents and testimony on the **Fort Worth Police Department**.

Please find attached a copy of the subpoenas for the production of documents and testimony.

1

Date:  July 21, 2023                                   Respectfully submitted,

                                                      */s/ Jennifer B. Hagedorn*
                                                      Ronda L. Harvey Esq. (WVSB 6326)
                                                      Fazal A. Shere, Esq. (WVSB 5433)
                                                      Ashley H. Odell, Esq. (WVSB 9380)
                                                      Jennifer B. Hagedorn, Esq. (WVSB 315543)
                                                      BOWLES RICE LLP
                                                      600 Quarrier Street
                                                      Charleston, West Virginia  25301
                                                      304-347-1100
                                                      rharvey@bowlesrice.com
                                                      fshere@bowlesrice.com
                                                      ahardestyodell@bowlesrice.com
                                                      jhagedorn@bowlesrice.com

                                                      *Counsel for Defendants The Kroger Co.,*
                                                      *Kroger Limited Partnership I, and*
                                                      *Kroger Limited Partnership II*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of July, 2023, a true and correct copy of the

foregoing was served via email on the following:

        mdl2804discovery@motleyrice.com

        tracks6to10defendants@bbhps.com

                                                      */s/     Jennifer B. Hagedorn*
                                                      Jennifer B. Hagedorn (WVSB #315543)

                                                      *Counsel for Defendants The Kroger Co.,*
                                                      *Kroger Limited Partnership I, and*
                                                      *Kroger Limited Partnership II*

2

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

| | | |
|---|---|---|
| In re Prescription Opiate Litigation | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    1:17-md-02804-DAP |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                Fort Worth Police Department
             Bob Bolen Public Safety Complex, 505 West Felix Street, Fort Worth, TX 76115
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Schedule "A"

| Place:  Remote Deposition via Veritext Legal Solutions | Date and Time:  08/18/2023 10:00 am |
|---|---|

           The deposition will be recorded by this method:     Stenograph and Videotape

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule "B"

           The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     07/21/2023

                *CLERK OF COURT*
                                                                OR

_____                 /s/ Jennifer B. Hagedorn
   *Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II, Kroger TX LP   , who issues or requests this subpoena, are:

Jennifer B. Hagedorn, Bowles Rice LLP, 600 Quarrier Street, Charleston, WV 25301; 724-514-8940; jhagedorn@bowlesrice.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   1:17-md-02804-DAP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Schedule "A"

## Topics for Examination

## Fort Worth Police Department (FWPD)

The topics upon which the person or persons designated by You are asked to be prepared to testify in accordance with Rule 30(b)(6) are:

1.      Your understanding of the meaning of the term "suspicious orders" in connection with orders for controlled substances.

2.      Your procedures, policies, and protocols regarding receipt, storage, maintenance, retention, organization, analysis, utilization, investigation, and handling of Suspicious Order Reports and its approach in investigating, sharing, or in any way responding to or using such Suspicious Order Reports.

3.      Any guidance issued by the Fort Worth Police Department (FWPD)regarding the reporting of suspicious orders, including memoranda, operating procedures, or other instructions.

4.      Your use of Automated Reports and Consolidated Ordering Systems (ARCOS) Data, Suspicious Order Reports, data from the Texas Prescription Monitoring Program (Texas PMP), in connection with Your efforts to address drug-related crimes, the diversion of Prescription Opioids, or the unlawful trafficking of Prescription or Illicit Opioids.

5.      Your understanding or investigation of the source of Illicit Opioids manufactured, Distributed, or consumed in the State of Texas.

6.      Your understanding or investigation of individuals and entities for unlawfully producing, transporting, diverting, using, purchasing, distributing, selling, or trafficking Prescription or Illicit Opioids within or into the State of Texas.  Included in this topic are any communications, such as complaints or notifications, You received concerning actual or potential involvement of any person or entity in the improper distribution, sale, or diversion of Prescription Opioid medications.

7.      Your efforts to combat the misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the State of Texas.

8.      The identities of the pharmacists, pharmacy interns, doctors or other prescribers, patients, or other persons or entities that You have investigated for the diversion of Prescription Opioids within or in the State of Texas, and the identities of all persons or entities that You suspect of having engaged in such conduct.

9.      The identities of the individuals or entities You have investigated or disciplined for unlawfully producing, transporting, diverting, selling, or trafficking Prescription Opioids

and/or Illicit Opioids within or into the State of Texas, and the identities of all persons or entities that You suspect of having engaged in such conduct.

10. Your efforts to combat the opioid epidemic and the diversion of Prescription Opioids including but not limited to the following:

    (a) Your participation in any task force, organization, and/or committee with responsibilities relating to Prescription Opioids or Illicit Opioids in the state of Texas.

    (a) Your efforts to investigate and track the illegal use, abuse, misuse, sale, purchase, trafficking, diversion, or distribution of Prescription or Illicit Opioids within the State of Texas.

    (b) Your efforts to investigate individuals or entities located within the State of Texas, whose conduct regarding Prescription or Illicit Opioids You believe, suspect, or contend caused harm within the State of Texas.

    (c) Any information or assistance, including but not limited to financial grants, You provided to the State of Texas to combat drug-related crime, respond to the opioid epidemic, or form a joint task force to combat the opioid epidemic.

    (d) Your efforts to facilitate intelligence sharing and promote coordinated strategies to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the State of Texas.

    (e) Your efforts to investigate, indict, charge, sanction, and/or discipline individual or entities for the unlawful use, abuse, misuse, sale, purchase, trafficking, diversion, or distribution of Illicit or Prescription Opioids within or into the State of Texas.

    (f) Your efforts to develop and use Prescriber Report Cards.

11. Your understanding of the therapeutic benefits of Prescription Opioid medications.

12. Your understanding of what constitutes "diversion'" of Prescription Opioid medications, and the ways in which Prescription Opioid medications have been diverted in the State of Texas since 1996.

13. The Texas Prescription Monitoring Program (PMP). Included in this topic is why the program was created; what purpose it serves; the data it contains; who requested or had requested access to information in the program; and the evolution of its capabilities and

utilization. Included in this topic is any analysis of data contained in the PMP and any actions taken in response to such analysis.

14.    Your knowledge of the volume and details of prescriptions for Prescription Opioid medications dispensed in the State of Texas.

15.    The professional obligations of pharmacists and other persons regulated by the Fort Worth Police Department (FWPD) relating to the dispensing of Prescription Opioid medications, and Your efforts to enforce those obligations.

16.    Professional education, training programs, and guidelines relating to the prescribing and dispensing of Prescription Opioid medications and other controlled substances.

17.    The sharing, or lack of sharing, of Prescription Opioid distribution data (e.g., ARCOS or CSMP data) between the TSBP and the DEA, and how the TSBP used any data it received from DEA.

18.    The authority and role of the Fort Worth Police Department (FWPD) in enforcing the Texas Controlled Substances Act, the practice of pharmacy, and the federal Controlled Substances Act.

19.    The Arlington Police Department (APD)'s licensing responsibilities, including the licensing and licensing files of manufacturers, wholesale distributors, pharmacies, pharmacists, and pharmacy technicians.

20.    The structure and operation of the Fort Worth Police Department (FWPD).

21.    The finances of the Fort Worth Police Department (FWPD).

22.    Your Communications with the Mansfield Police Department (MPD), Fort Worth Police Department (FWPD), Arlington Police Department (APD), Texas Employee Retirement System (ERS), Texas Department of Insurance (TDI) (Workers' Compensation Division), Texas Department of Family and Protective Services (DFPS), Texas A&M Opioid Task Force, Texas Drug Utilization Review Board (DURB), Texas Health and Human Services (HHS), Texas Department of State Health Services (DSHS), Texas State Board of Pharmacy (TSBP), Texas Medical Board, the Texas State Board of Dental Examiners, the Texas Board of Nursing, the National Association of Boards of Pharmacy, other state Boards of Pharmacy, the DEA, the Department of Justice, the FBI, other federal, state, and local law enforcement entities, regarding Suspicious Order Reports; the abuse, misuse, sale, purchase, trafficking, diversion, or distribution of Illicit or Prescription Opioids; efforts to combat the opioid crisis; and/or Illicit Opioids.

23.    Your Communications with Defendants, including communications regarding actual or suspected diversion by pharmacists, pharmacy interns, doctors or other prescribers, or patients in Texas.

24.   Communications between You and any other local, state, or federal agency relating to Defendants.

25.   Communications between You and any person or entity concerning any topic listed above (No. 1 through 24), including but not limited to all Communications regarding Illicit Opioids, Prescription Opioids, diversion, and the opioid epidemic.

## Schedule "B"

## Requests for Production of Documents

## <u>Definitions</u>

Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. "Abuse" means the nonmedical or otherwise unauthorized or harmful use or misuse of any Opioid or controlled substance and includes addiction, overdose, death, and diversion to illicit use.

2. "All" shall be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

3. "Any" shall be construed to mean "any and all."

4. "Claim" means any request for payment or reimbursement, in full or in part.

5. "Claims Data" means all information and data regarding the submission, processing, status, adjudication, and reimbursement of a Claim, including claim number and extension, if any; group number; plan type; member number; member date of birth, gender, and benefit status; subscriber information; dates of injury, prescription, fill, claim submission, and bill; all diagnosis code(s); drug name, code, generic name, class, and type; prior authorization information; quantity; days supply; provider name, address, National Provider Information, Medical Education number, Drug Enforcement Agency number; bill amount, insurance allowed amount, insurance plan paid amount, copayment amount, coinsurance amount, deductible amount, other insurer paid amount, other insurer name, total paid amount; fee schedule; Average Wholesale Price unit cost; payment basis, pharmacy billed charge or Usual & Customary Charge, ingredient cost, dispensing fee, other cost information; and patient name and address or, if Plaintiffs are unable to provide patient name, information sufficient to associate all Claims filed regarding a particular individual across all databases containing responsive information.

6. "Communication(s)" means any disclosure, transfer, or exchange of information or opinion, however made.

7. "Defendants" means, collectively, the named defendants in this action, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

8. "Document(s)" has the full meaning ascribed to it Texas Rules of Civil Procedure, and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected

data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in the Board's possession, custody, or control. "Document(s)" include, but are not limited to, books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, databases, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

9. "Electronically Stored Information" or "ESI" is used consistent with how the term is defined and construed under Texas law and includes without limitation all electronic data (including reasonably accessible active, archival, or backup data, such as backup tapes, distributed data, electronic mail, forensic copies, metadata, and residual data) stored in a medium from which information can be reasonably obtained.

10. "Health Care Program(s)" means every program, department, facility, or Health Care Provider controlled, administered, overseen, or paid for by the State of Texas, its agencies, sub-agencies, offices, departments, divisions, subdivisions, boards, or commissions, or any other Person or entity acting on their behalf, whether in full or in part, that (i) provides health care for any Texas residents; (ii) provides health care for any employees, temporary employees, or independent contractors of the State of Texas during the Relevant Time Period; (iii) provides payment or reimbursement of any Claims, in full or in part; or (iv) reviews, authorizes, or determines the conditions for payment or reimbursement, in full or in part, for any Opioid prescribed, administered, or dispensed to a Patient.

11. "Health Care Provider(s)" or "HCP(s)" means any healthcare professional, healthcare or medical entity, or other Person or entities who provides medical assistance or healthcare services to Patients or other individuals, including but not limited doctors, nurses, or physician's assistants, or Persons who prescribe, administer, or dispense any Opioid or Medication Assisted Treatment to Patients or other individuals.

12. "Including" shall be construed to mean "including but not limited to."

13. "Manufacturer" means any Person, organization, or corporate entity that manufactures any Opioid.

14. "Medication Assisted Treatment" means the use of medications with counseling and behavioral therapies to treat substance Abuse disorders, including to prevent Opioid misuse, Abuse, or overdose.

15. "Opioid(s)" refers to FDA-approved pain-reducing medications consisting of natural or synthetic chemicals that bind to opioid receptors in a patient's brain or body to produce an analgesic effect.

16. "Patient(s)" means any Person in the State of Texas or any Person covered by a Health Care Program in Texas who receives medical treatment, and includes any Person to whom any Opioid is prescribed, administered, or dispensed.

17. "Person(s)" means any natural or legal person.

18. "Plaintiffs" mean the Plaintiffs, including all of their agencies, departments, commissions, boards, officers, or other executive entities; any agent, employee, or representative; and any other persons, agencies, or entities acting or purporting to act on their behalf or controlled by them.

19. "Program(s)" means every program, department, facility, or HCP that (i) provides health care for Plaintiffs' residents; (ii) provides health care for any employee of the Plaintiffs during the Relevant Time Period; (iii) provides payment or reimbursement of any claims, in full or in part; or (iv) reviews, authorizes, or determines the conditions for payment or reimbursement, in full or in part, for any Opioid prescribed, administered, or dispensed to a Patient.

20. "Relate to," "related to," "relates to," "relating to," and "concerning" mean referring to, summarizing, reflecting, constituting, containing, concerning, embodying, mentioning, discussing, describing, consisting of, comprising, showing, commenting on, tending to support or tending to refute, or in any way logically or factually connected with the matter that is the subject of the Request.

21. "Subject Opioid(s)" refers to any of the following Opioids: OxyContin, MS Contin, Dilaudid, Dilaudid HP, Butrans, Hysingla ER, Targiniq ER, Tapentodol, Actiq, Fentora, Duragesic, Nucynta, Nucynta ER, Opana, Opana ER, Percodan, Percocet, Zydone, Kadian, Norco, any generic forms of the foregoing Opioids, oxycodone, oxymorphone, hydromorphone, hydrocodone, and prescription fentanyl.

22. "You" and "Your" mean the Person(s) or entity(s) to whom or to which this Subpoena is directed as reflected on the first page, or subsections as applicable. These terms also shall include all agencies, sub-agencies, offices, departments, divisions, subdivisions, boards, commissions, officers, agents, employees, investigators, representatives, consultants, or other entities or Persons within Your control, and any predecessor, successor, parent, subsidiary, division, or affiliate.

## Instructions

1. Unless otherwise indicated, these Requests cover the time frame from January 1, 1990 to present.

2. When providing your responses, please indicate the Request to which each document or answer responds in the meta data field, Request No. If You believe that You already have produced documents responsive to any of the Requests below, then please specify (by bates-number) which documents are responsive to which specific Request.

3. Documents shall be produced in accordance with and as they are kept in the usual course of business.

4. For each document that you produce, produce the current version together with all earlier editions, versions or predecessor documents during the relevant time period, even though the title of earlier documents may differ from current versions.

3

5. Requested format for documents produced electronically in response to this Request:

a.  Any documents produced in response to this Request should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

b.  Document Unitization. Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

c.  Bates Numbering. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically branded onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. In order to ensure that the Bates Numbers do not obscure portions of the documents, the images may be proportionally reduced to create a larger margin in which the Bates Number may be branded. There shall be no other legend or stamp placed on the document image, except those sections of a document that are redacted to eliminate material protected from disclosure by the attorney-client or work product privileges shall have the legend "REDACTED" placed in the location where the redaction(s) occurred or shall otherwise note the location and/or location of the information for which such protections are claimed.

d.  File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers. e. Production Media. The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner: "V001-001," "V001-002," "V001-003." Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media. f. Objective Coding/Extracted Meta Data. Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields

and type of content set forth in the SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above. g. Native format for Excel and databases. To the extent that such documents exist in Excel or another spreadsheet program, produce the document in its native format. To the extent that the document format constitutes a database created or maintained in Access or another software program, produce the document in its native format. If the database is based upon proprietary software, produce whatever keys and instructions are necessary to review it. 6. Requested format for hard copies of documents produced in response to this Request: a. create electronic copies of the documents and produce them in accordance with the procedures described in section 5(a) herein, provided that you retain the originals from which the electronic copies were made until the final disposition of the matter; b. include a loadfile with corresponding information, including the following data fields: BegDoc, EndDoc, Custodian, DocTitle, Filename, Request No.; c. the Custodian field in the loadfile should contain the name of the custodian or location from which the hard copy document was taken; d. the Request No. field should contain the number of the Requests to which the document is responsive.

7. This Request requires you to produce all described documents in your possession, custody or control without regard to the person or persons by whom or for whom the documents were prepared (e.g., your employees, distributors or dealers, competitors or others).

8. If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document. The description shall include the following:

a. the name of each author, sender, creator, and initiator of such document;

b. the name of each recipient, addressee, or party for whom such document was intended;

c. the date the document was created;

d. the date(s) the document was in use;

e. the title of the document;

f. a detailed description of the content of the document;
g. the reason it is no longer in your possession, custody or control; and

h. the document's present whereabouts and custodian thereof.

9. In the event a document that is responsive to these Requests is not in your possession but you have a right to obtain the document or a copy of the document from a third party, you must obtain it (or a copy) and produce it in response to these Requests.
10. If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

11. If you assert a privilege in responding to this Subpoena, state the type of privilege asserted and the basis for its assertion. In addition, identify the Communication or Document with respect to which the privilege is asserted. For any document to which a privilege is asserted, state:

a. The type of document (e.g., letter, memorandum, contract, etc.), the date of the document, and the subject matter of the same;

b. The name, address, and position of the author of the document and of any person who assisted in its preparation;

c. The name, address, and position of each addressee or recipient of the document or any copies of it;

d. The present location of the document and the identity of the person having custody of it.

12. The documents requested: (i) shall not contain any HIPAA-protected patient information including patient names, social security numbers, addresses, birth dates, or other identifying information; or, (ii) shall have HIPAA-protected patient identifying information redacted by defendant. Should You consider any of the Documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate these documents as such under any operative Protective Order in this case.

13. Should You determine that any of the Documents requested contain personal health information that may not be disclosed pursuant to HIPAA or analogous state law, please redact that information and assign in its place a unique identifier. Where there exists a good faith doubt as to the scope of personal health information that should be redacted, You are asked and encouraged to contact counsel for Defendants in advance of applying potentially overbroad redactions or unnecessarily withholding responsive Documents.

14. Produce documents in the order in which you maintained them in your files, in copies of their original file folders, labeled with the folder's original file labels. Do not mask any portion of any document; produce the entire document, including all attachments to such responsive documents. Provide a key to all abbreviations used in documents and attach the key to the appropriate documents.

15. If you obtain information or documents responsive to any Request after you have submitted your written Responses or production, you have an affirmative duty to supplement your Responses and/or production with any new and/or different information and/or documents that become available to you.

16. Where there exists a good faith doubt as to the meaning or intended scope of a Request, and Your sole objection would be to its vagueness or ambiguity, You are asked and encouraged to contact counsel for Defendants in advance of asserting an unnecessary objection. The undersigned counsel will provide additional clarification or explanation as may be needed.

**Special Instructions for Proprietary Databases**

Documents stored in proprietary databases should be produced in such a way that the data, information, and functionality of the original database(s) is not lost.

**Documents to be Produced Pursuant to this Subpoena**

1.  All Communications between You and Plaintiffs discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into Tarrant County, Texas.

2.  All Documents discussing, referring, or relating to Your or Plaintiffs' efforts, including, but not limited to, any programs or task forces that You or Plaintiffs have developed to combat or address the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within Tarrant County, Texas.

3.  All Documents relating to any law enforcement, child endangerment, child removal, or administrative investigations, prosecutions, and/or enforcement actions relating to Prescription or Illicit Opioids or Illicit Drugs in Tarrant County, Texas.

4.  All Documents discussing, referring, or relating to Your meeting minutes, including, but not limited to, committee and subcommittee meeting minutes, in which the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids, Illicit Opioids, or Illicit Drugs within or into Tarrant County Texas or where Tarrant County, Texas or the State of Texas were discussed.

5.  All Documents constituting or related to any Communications between You, or anyone acting on Your behalf, and any federal, state, or local official or agency (including, but not limited to, the DEA, the Federal Bureau of Investigation, a United States Attorney or representative thereof, any other department within the Texas Health and Human Services or its constituent providers, the Texas Department of Public Safety, the Texas Board of Pharmacy, the Texas Medical Board, the Texas Board of Dentistry, the California Board of Examiners for Licensed Practical Nurses, the Texas Board of Nursing, other cities, counties or agencies of the State of Texas, or any city, county, or agency of any other State), insurer, third-party payer, or pharmacy benefit manager that refer or relate to improper prescribing, unlawful sale, or other suspected wrongdoing related to Prescription Opioids, Illicit Opioids, or Illicit Drugs, or the possession, abuse, illegal sale, or addiction to other opioids in Tarrant County, Texas or the State of Texas.

6.  All Documents and data relating to substance abuse or suspected substance abuse involvement in Tarrant County, Texas or the State of Texas, including but not limited to information contained in any applicable tracking database.

7.  All narrative data fields (de-identified) from any database discussing or relating to parental or child abuse of, or removal due to, Prescription Opioids, Illicit Opioids, and Illicit Drugs.

7

8.     All data You collected or received from any third party contractors related to drug testing results, including any information identifying the presence of Prescription Opioids, Illicit Opioids, or Illicit Drugs.

9.     All statistical reports You have prepared (either upon request or as part of the normal course of operations) that relate to substance abuse in Tarrant County, Texas.

10.    All Documents sufficient to identify, by year and for each program or service that You provide, (a) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have an opioid use disorder resulting from using Illicit Opioids, and the amount You were paid by Tarrant County, Texas for those services; (b) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have an opioid use disorder resulting from the misuse or abuse of Prescription Opioids, and the amount You were paid by Tarrant County, Texas for those services; (c) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have a drug addiction that does not involve opioids, and the amount You were paid by Tarrant County, Texas for those services; and (d) the number of individuals in Tarrant County, Texas to whom You provided services because they, or someone closely associated with them or related to them have a substance abuse problem or addiction that does not involve drugs, and the amount You were paid by Tarrant County, Texas for those services.

11.    All transactional data and databases You use to track, record, or otherwise account for Your annual revenue and expenses.

12.    All Documents reflecting Your finances, including but not limited to, budgets, expense reports, and Documents concerning Your funding.

13.    All Documents and Communications referring to or relating to any assistance, grants, subgrants, or funding that You sought and/or obtained to combat drug-related issues with respect to the opioid epidemic, including but not limited to, documents reflecting funding you provided to the Plaintiffs related to Prescription or Illicit Opioids.

14.    All transactional data and databases You use or Documents you have that track, record, or otherwise account for the services that You provide or the number of cases you handle or service per year.

15.    All transactional data and databases You use or Documents you have that track, record, or otherwise account for the services that You provide or the number of cases you handle or service per year regarding, relating to or referring to Prescription Opioids, Illicit Opioids, or Illicit Drugs.

16.    All case files in Your possession or control that relate to Prescription or Illicit Opioids or any other substance use and abuse in Tarrant County, Texas.

17. All Documents reflecting, describing, or referring to the reason or root cause for any increases or decreases in the number of cases or amount of services You are currently handling or providing or have handled or provided in the past.

18. All Documents reflecting Your structure and operation, including but not limited to, organizational charts and all Documents discussing the operation of Your Executive Board, initiatives and programs.

19. All Documents concerning and/or relating to Your creation.

20. All Documents discussing, referring, or relating to any trainings that You provide regarding Prescription or Illicit Opioids.

21. All Documents constituting or describing data and/or analysis relating to people who obtain Prescription Opioids through illegal or improper means and/or diversion.

22. All Documents containing data or analysis relating to Prescription Opioids that were prescribed off-label or contrary to accepted medical guidelines.

23. All Documents containing data or analysis relating to the abuse, misuse, or diversion of Prescription Opioids, broken down by product or chemical substance.

24. All Documents reflecting direct, indirect, and monetary costs and expenses You or any Plaintiff has incurred that You attribute to the opioid abuse epidemic or the use, misuse or abuse of Prescription Opioids or Illicit Opioids in Tarrant County, Texas.

25. All Documents relating to any investigation of factors other than the activities of Defendants that caused or contributed to the opioid abuse epidemic in the Tarrant County, Texas.

26. Any reports, presentations, lectures, seminars, workshops, symposia or other similar educational programs made or sponsored by You or on Your behalf related to the opioid abuse epidemic in Tarrant County, Texas, including all data and source materials used to create those documents.



# AFFIDAVIT OF JAMES STOCKTON

STATE OF TEXAS           §
                         §
COUNTY OF TARRANT        §

 BEFORE ME, the undersigned authority, personally appeared James Stockton, the Affiant, who, being by me duly sworn, deposed as follows:

1. "My name is James Stockton. I am over eighteen years of age.  I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated, which are true and correct.

2. I am employed as a Captain with the City of Fort Worth Police Department and have served in this role since __Februray 2021__ .

3. As a municipal law enforcement agency, Fort Worth PD does not have primary regulatory or enforcement responsibility in relating to prescription opiates, pharmacies, and medical dispensation of such. Responsibility for this is the domain of the DEA Illegal Diversion division, the FDA, and the State Boards of Medicine, Pharmacy, and Nursing respectively. Our focus is largely upon illegal street drugs and illegal substances such as Methamphetamine, Cocaine, Heroin, MDMA/Ecstasy, Fentanyl, and marijuana. If asked to provide an approximation of what we deal with, I would say that around 95% of our activity is concerned with such illegal street drugs. Of course, those suspects we encounter and have cause to arrest sometimes do have in their possession small quantities (a few pills) of prescription medications that are being misused. In a similar manner, we sometimes encounter an individual that has a prescription bottle of medication that has

been pilfered for misuse as well. Again, these occurrences are mostly incidental and do not represent the great majority of our enforcement-related contacts.

4.      In my nearly 32 years of law enforcement service, I can only personally recall three instances which involved warrant/arrest service related to pharmacists, pharmacies, or doctors, and in each of those cases the DEA was the lead agency and our officers were there only for security and uniformed presence. Since we do not have responsibility for such regulation or enforcement, we do not generate Suspicious Order Reports, nor do we use the Automated Reports and Consolidated Ordering System (ARCOS) or participate in the TX Prescription Monitoring Program as referenced in the subpoena. Accordingly, we do not compile or have such data and statistics relating to these aspects. Any such information relating to such illegal diversion of Prescription Opioids or related practices would be referred to one of the aforementioned agencies for follow-up investigation."

**FURTHER AFFIANT SAYETH NAUGHT.**

James Stockton

**SUBSCRIBED AND SWORN TO BEFORE ME** on the 16TH day of August, 2023, to certify which witness my hand and official seal.



KALA HOWARD
Notary ID #128512171
My Commission Expires
February 28, 2027

Notary Public, State of Texas

---